UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY LIPTON, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | 11 C 2952 |
| Plaintiff, | ) | |
| | ) | Judge Feinerman |
| vs. | ) | |
| | ) | |
| CHATTEM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum Opinion and Order

Plaintiff Tracey Lipton brought this putative class action alleging that Defendant

Chattem, Inc. sold her a weight loss product, Dexatrim, contaminated with a toxic substance,

hexavalent chromium. The complaint, which alleges only economic injury and not physical

injury, purports to set forth state law claims under the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*., and for intentional misrepresentation,

breach of the implied warranty of merchantability, and unjust enrichment. Chattem has moved to

dismiss the suit under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and,

alternatively, under Rule 12(b)(6) for failure to state a claim. Lipton has declined to defend her

implied warranty of merchantability claim, Doc. 25 at 14-15, which accordingly is dismissed

with prejudice. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 720-21 (7th Cir. 2011); *Kirksey v.

R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1040-41 (7th Cir. 1999). Chattem's motion

otherwise is denied.

**Background**

The complaint's well-pleaded facts are assumed true on a motion under Rule 12(b)(1) and 12(b)(6), with all reasonable inferences drawn in Lipton's favor. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009); *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). The following facts are set forth as favorably to Lipton as permitted by the complaint; no endorsement of these facts is intended at this juncture.

Chattem manufactures and sells Dexatrim, a product designed to cause weight loss. Doc. 1 at ¶ 9. Chattem advertises that Dexatrim "gives you the power to lose weight, curb binges, and keep you in control of your diet." *Ibid*. On its website, Chattem gives the following answer to the question, "Is Dexatrim safe?":

> As with all dietary supplements, it is important to carefully follow the recommended dosage and thoroughly read the warning label before stating the regimen. Dexatrim is not an appropriate weight control aid for persons suffering from certain medical conditions. Please see our label information for each specific product … and consult your physician for further information.

*Id*. at ¶ 10. Dexatrim's packaging states that it is the "#1 Pharmacist Recommended Appetite Suppressant." *Id*. at ¶ 25.

In March 2010, ConsumerLab.com issued two reports on weight loss supplements. *Id*. at ¶¶ 11-12, 19-20. The organization reported that Dexatrim contained between 1.6 and 3.2 micrograms (mcgs) of hexavalent chromium. *Id*. at ¶¶ 17, 20. One of the reports states:

> [Hexavalent chromium] is a more toxic form of chromium than the one our bodies require, which is trivalent chromium … . Hexavalent chromium does not occur in significant amounts naturally but is formed as an industrial by-product. … Ingesting large amounts of [hexavalent chromium] can cause

> stomach upsets and ulcers, convulsions, kidney and liver damage, and even death.  [It] is also a carcinogen—it is the form of chromium implicated as causing cancers in the movie Erin Brockovich.  While it should not normally be found in chromium supplements, it has been known to occur as a contaminant.
>
> Legal limits have not been established for the amount of hexavalent chromium in supplements but the state of California is considering an aggressive public health goal limiting hexavalent chromium in drinking water to only 0.06 ppb—about 0.12 mcg per day.  The California limit is based on a one in one million lifetime cancer risk extrapolated from studies in mice. [Dexatrim] contain[s] amounts of hexavalent chromium that would exceed the maximum amount one could be exposed to from daily intake of water under California's proposed limit. … Although it is hard to know the exact risks posed by these supplements, it seems prudent to avoid such exposure to hexavalent chromium.

*Id*. at ¶¶ 14, 18.  The Center for Disease Control and Prevention ("CDC") raised similar concerns about hexavalent chromium, stating:

> An increased risk of lung cancer has been demonstrated in workers exposed to [hexavalent chromium].  Other adverse health effects associated with [hexavalent chromium] exposure include dermal irritation, skin ulceration, allergic contact dermatitis, occupational asthma, nasal irritation and ulceration, perforated nasal septa, rhinitis, nosebleed, respiratory irritation, nasal cancer, sinus cancer, eye irritation and damage, perforated eardrums, kidney damage, liver damage, pulmonary congestion and edema, epigastric pain, and erosion and discoloration of teeth.

*Id*. at ¶ 22.

Dexatrim's promotional materials and labels do not disclose that it contains hexavalent chromium and do not set forth the adverse health effects associated with ingesting hexavalent chromium.  *Id*. at ¶ 23.  With respect to chromium-related substances, the packaging and labeling state only that Dexatrim contains "Chromium."  *Id*. at ¶ 25.  Lipton alleges that the packaging's statement that Dexatrim is the "#1 Pharmacist Recommended Appetite Suppressant," coupled

with the lack of warnings about the hexavalent chromium, implies that "Dexatrim is safe and does not contain hexavalent chromium." *Ibid*.

Lipton purchased Dexatrim numerous times since 2008. *Id*. at ¶ 24. Lipton made the purchases "because she had been exposed to the promotion, advertising and marketing of Dexatrim …, including representations on the packaging and labeling of Dexatrim to the effect that Dexatrim was safe for consumption and that it did not contain hexavalent chromium, which were false." *Ibid*. The complaint alleges that "[a]s a direct result of Chattem's deceptive advertising, … [Lipton] was deceived into purchasing and spending money on Dexatrim. In exchange for her money, [she] received something other than what was represented, a product [she] did not seek. As a result, she was injured." *Id*. at ¶ 26. The complaint further alleges that "[h]ad warnings concerning the presence of hexavalent chromium in Dexatrim been given by Chattem … [Lipton] would not have purchased Dexatrim and exposed [herself] to the potential health problems associated with hexavalent chromium." *Id*. at ¶ 27.

Based on these allegations, the complaint charges that Chattem violated the ICFA by "fail[ing] to disclose the safety and health risks associated with Dexatrim[, which] injured [Lipton because she] would not have purchased Dexatrim absent Chattem's unfair and deceptive trade practices," *id*. at ¶¶ 38-43; that Chattem intentionally misrepresented that "Dexatrim is safe for consumption and does not contain the hazardous chemical hexavalent chromium … , [causing Lipton to] los[e] money by purchasing a product that was not what it was represented to be, which was worth less than [she] paid for it and which [she] would not have purchased but for the misrepresentations," *id*. at ¶¶ 51-56, and that Chattem has been unjustly enriched through its

receipt of "excessive revenue derived from the sale of Dexatrim, which [Chattem] misrepresents as being safe for consumption, when … it is not," *id*. at ¶¶ 58-59.

### Discussion

As noted above, Chattem has moved to dismiss under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim.

## I.    Rule 12(b)(1): Whether the Complaint Alleges Standing

To establish standing, a plaintiff must allege injury, causation, and redressability.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Lipton's alleged injury is financial; she claims that she purchased a product worth less than what she paid for it, and also that she would not have purchased the product had she known it contained hexavalent chromium.  Doc. 1 at ¶¶ 3, 26-27, 42, 56; Doc. 25 at 1-2, 5, 7, 11.  For the reasons given in *In re Aqua Dots Products Liability Litigation*, 654 F.3d 748 (7th Cir. 2011), these allegations are sufficient to establish standing.

The plaintiffs in *Aqua Dots* sued the manufacturer and distributors of a children's toy consisting of little beads that could be fused together to create designs.  654 F.3d at 749.  When swallowed, a chemical in the beads metabolized into gamma-hydroxybutyric acid (GHB), commonly known as the "date rape" drug.  *Ibid*.  Children who swallowed a large number of beads became sick, with some falling into comas.  *Id*. at 749-50.  The plaintiffs were not physically injured children or their parents, but instead were the parents of children who suffered no physical injury.  *Id*. at 750.  Despite the lack of physical injury, the Seventh Circuit held that the plaintiff had standing.  According to the court, the fact that the plaintiffs "did not suffer physical injury, [did] not mean that they were uninjured.  The plaintiffs' loss is financial: they

paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing." *Id.* at 751.

The same result obtains here. The complaint alleges, among other things, that Lipton paid more for Dexatrim than she would have paid had she known it contained hexavalent chromium. As in *Aqua Dots*, this is sufficient to establish standing. *See Askin v. Quaker Oats Co.*, 818 F. Supp. 2d 1081, 1084 (N.D. Ill. 2011) (holding that the plaintiff had standing where she alleged that she paid a premium for a food product based on the defendant manufacturer's false representations that the product did not contain unhealthy trans fats); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124-25 (N.D. Cal. 2010) (same); *Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1240-41 (D. Kan. 2007) (same where the plaintiff alleged that she paid more for beverages than they were worth because they potentially contained benzene).

Chattem attempts to distinguish *Aqua Dots* on the ground that the injury in *Aqua Dots* was the diminished resale value of a *durable* good (the toys), while Lipton purchased a *consumable* good that cannot be resold. Doc. 29-1 at 2-3. This argument is unconvincing. The Seventh Circuit in *Aqua Dots* did not mention this distinction or even hint at its existence. Moreover, even if Lipton is unable to resell the Dexatrim she purchased, she still suffered injury because she (allegedly) paid more for the product than she would have had she known that it contained hexavalent chromium.

The court recognizes that *Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112 (S.D. Ind. 2011), *appeal dismissed*, No. 11-3242 (7th Cir. Jan. 25, 2012), came to the opposite conclusion in dismissing an identical case against Chattem on standing grounds. *Id.* at 117-20. It would appear, however, that neither party in *Hughes* apprised the district judge of the *Aqua Dots*

decision, which predated *Hughes* by only two weeks. This court therefore respectfully disagrees with the result in *Hughes*. *See Askin*, 818 F. Supp. 2d at 1085 (opining that *Hughes* cannot be reconciled with *Aqua Dots*).

## II. Rule 12(b)(6): Whether the Complaint States a Claim

Chattem offers several arguments as to why Lipton's legal theories fail to state a claim. The arguments are considered in turn.

### A. Actual Damages

Chattem argues that the complaint fails to allege actual damages and therefore does not properly state claims under the ICFA or for intentional misrepresentation and unjust enrichment. Actual damages is an element of Lipton's ICFA and intentional misrepresentation claims. *See* 815 ILCS 505/10a(a) (ICFA); *Avery v. State Farm Mut. Auto. Ins., Co.*, 835 N.E.2d 801, 849-50 (Ill. 2005) (same); *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1272 (7th Cir. 1993) (intentional misrepresentation) (citing *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980)); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law."). Although loss or damage is not an element of unjust enrichment, an unjust enrichment plaintiff "must show a detriment," *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 519 (7th Cir. 2011), which for present purposes will be treated as the functional equivalent of actual damages. The actual damages requirement imposed by Illinois law is distinct from the Article III injury requirement, so it is necessary to determine whether the complaint adequately pleads actual damages even though it already has been found to plead Article III standing. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007); *Rifkin v.*

*Bear Stearns & Co.*, 248 F.3d 628, 631-32 (7th Cir. 2001); *Gonzalez*, 489 F. Supp. 2d at 1240 n.7.

Illinois law provides benefit-of-the-bargain damages for individuals who have been injured by fraud. Such damages ensure that "the defrauded party is … placed in the same financial position he would have occupied had the misrepresentations in fact been true." *Price v. Phillip Morris, Inc.*, 848 N.E.2d 1, 56 (Ill. 2005) (Karmeier, J., specially concurring) (citing *Martin v. Allstate Ins. Co.*, 416 N.E.2d 347, 352 (Ill. App. 1981)); *see also id*. at 79-80 (Freeman, J. dissenting); *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 537-38 (Ill. 1989); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 274 (7th Cir. 1996); *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). Pertinent here, benefit-of-the-bargain damages may be awarded to compensate purchasers of products who paid prices that were inflated by the defendant's fraud. Such plaintiffs may sue for the diminished value of the product—the difference between the product's value if the misrepresentations had been true and the product's true value. *See Wiegel v. Stork Craft Mfg., Inc.*, 780 F. Supp. 2d 691, 694 (N.D. Ill. 2011) (plaintiffs sued to recover for the diminished value of a defective crib); *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 868-69 (N.D. Ill. 2006) (same for a car); *Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 760-63 (Ill. App. 2005) (same); *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 10-11 (Ill. App. 2001) (same); *Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874-76 (Ill. App. 1998) (same for cell phones); *see also Connick v. Suzuki*, 675 N.E.2d 584, 588 (Ill. 1996) (implicitly accepting a damages theory based on the diminished resale value of defective cars); *Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 862 (Ill. App. 1997) (same).

-8-

As noted above, the complaint alleges that Lipton was injured because she purchased a product that was worth less than she paid for it. The above-cited precedents establish that those allegations are sufficient to plead actual damages under Illinois law. That said, the fact that the complaint has *alleged* actual damages under Illinois law does not mean that Lipton will be able to *prove* such damages. *See Price*, 848 N.E.2d at 59 (Karmeier, J., specially concurring) (an economic injury plaintiff seeking recovery on the theory that she paid more for a product than what it was worth must prove the existence of less expensive substitutes); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 912-13 (W.D. Mo. 2009) (suggesting that an economic injury plaintiff cannot recover the purchase price of the product if the product has been consumed). The issue of proof will remain open on summary judgment and, if the case survives summary judgment, at trial.

**B.      Rule 9(b)**

Lipton's intentional misrepresentation and ICFA claims sound in fraud, Doc. 1 at ¶¶ 38-42, 51-55, and therefore must satisfy the pleading requirements imposed by Federal Rule of Civil Procedure 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (ICFA); *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1041 n.1 (N.D. Ill. 2007) (intentional misrepresentation) (citing cases). As a general rule, Rule 9(b) requires the plaintiff to allege "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that

is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (citation omitted). Rule 9(b) recognizes that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009).

Rule 9(b) is satisfied here. The complaint alleges that Lipton purchased Dexatrim in reliance on the "packaging and labeling[, which] sa[id] that [Dexatrim] is the '#1 Pharmacist Recommended Appetite Suppressant.'" Doc. 1 at ¶¶ 24-25. The labeling stated that Dexatrim contained chromium, but failed to mention *hexavalent* chromium, which (allegedly) is a big difference. *Id*. at ¶¶ 23, 25. Lipton generally alleges, as is allowed, that Chattem knew that its statements were false and intended consumers to rely on them. *Id*. at ¶¶ 40-41, 53-54. And Chattem did rely on them. *Id*. at ¶ 26-27, 38, 42, 55. These allegations are sufficient under Rule 9(b). *See Stacel v. Teva Pharm., USA*, 620 F. Supp. 2d 899, 902 (N.D. Ill. 2009); *Muehlbauer*, 431 F. Supp. 2d at 869-70; *see also Connick*, 675 N.E.2d at 595 (holding that vehicle purchasers adequately pled an ICFA claim where the complaint alleged that Suzuki was aware of the vehicles' tendency to roll over, that Suzuki failed to disclose the safety problem, and that the plaintiffs would not have purchased the vehicle had they been aware of the problem).

Relatedly, Chattem argues that "the alleged failure to list hexavalent chromium on the Dexatrim label proves immaterial" "given that there are no regulations governing the presence or disclosure of hexavalent chromium in dietary supplements." Doc. 10 at 10. Materiality is an element of an intentional misrepresentation claim and of an ICFA claim premised on fraud. *See Europlast*, 10 F.3d at 1272 (intentional misrepresentation); 815 ILCS 505/2 (listing "suppression or omission of any material fact" as an unfair or deceptive act under the ICFA); *Jamison v.*

-10-

*Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) (ICFA). Chattem forfeited

its materiality argument, however, by failing to develop the argument or to provide any

supporting authority. *See Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir.

2004); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

Chattem's materiality argument fails on the merits in any event, at least at the pleading

stage. To state a tort claim, a complaint need not allege that the defendant's conduct violated a

federal safety regulation. *See Vancura v. Katris*, 939 N.E.2d 328, 344 (Ill. 2010) (citing *Christou*

*v. Arlington Park-Wash. Park Race Tracks Corp.*, 432 N.E.2d 920, 924 (Ill. App. 1982), for the

proposition that "[c]ompliance with statutes and safety regulations is not conclusive evidence on

the question of negligence"); Restatement (Third) of Torts: Prod. Liab. § 4(b) (1998) ("a

product's compliance with an applicable product safety statute or administrative regulation is

properly considered in determining whether the product is defective with respect to the risks

sought to be reduced by the statute or regulation, but such compliance does not preclude as a

matter of law a finding of product defect"); Restatement (Second) of Torts § 288C (1965)

("Compliance with a legislative enactment or an administrative regulation does not prevent a

finding of negligence where a reasonable man would take additional precautions."). This ruling

does not preclude Chattem from again raising materiality on summary judgment or at trial. *See*

*J.C. Whitney & Co. v. Renaissance Software Corp.*, 2000 WL 556610, at *9 (N.D. Ill. Apr. 19,

2000) ("materiality [is a] question[] of fact and therefore not generally a viable basis for a Rule

12(b)(6) dismissal."); *Napcor Corp. v. JP Morgan Chase Bank, NA*, 938 N.E.2d 1181, 1188 (Ill.

App. 2010).

C.     **The Economic Loss Rule**

Finally, Chattem argues that the economic loss rule imposed by Illinois law defeats Lipton's intentional misrepresentation claim. Doc. 10 at 10-11. The economic loss rule prevents the recovery of pure economic damages for tort claims premised on strict liability or negligence. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-52 (Ill. 1982). The rule does not apply to torts sounding in intentional misrepresentation. *See id.* at 452 ("This court has held that economic loss is recoverable where one intentionally makes false representations."); *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 352 (Ill. 1990); *Waldinger Corp. v. CRS Grp. Eng'rs, Inc., Clark Dietz Div.*, 775 F.2d 781, 791-92 (7th Cir. 1985); *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 2009 WL 1635735, at *6 (N.D. Ill. June 9, 2009). Lipton's intentional misrepresentation claim therefore survives the economic loss rule.

### Conclusion

For the foregoing reasons, Chattem's motion to dismiss is granted as to the implied warranty of merchantability claim and denied as to Lipton's other claims.

April 10, 2012

_____
United States District Judge

-12-